# CIV 10-511 TUC CKJ

FILED ___ LODGED ___
RECEIVED ___ COPY

AUG 20 2010

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

PROSE CAROLE MARTINEZ AND JOHN DOE,

6815 W Oklahoma St. #2
Tucson, AZ 85735

Plaintiff 1, Plaintiff 2

vs.

SEIDBERG LAW OFFICES, P.C., KENNETH W. SEIDBERG, JOSEPH L. WHIPPLE, and Does 1 - 10

Defendants.
Case No.: C20104439

FIRST AMENDED COMPLAINT FOR VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT AND DECLARATORY RELIEF

JURY TRIAL DEMANDED

THE PARTIES

1. Plaintiff Prose Debtor 1 ("Plaintiff 1") is a citizen of the United States, a resident of Tucson, Arizona.
2. Plaintiff Prose Debtor 2 ("Plaintiff 2") is a citizen of the United States, a resident of Tucson, Arizona, and is not the spouse of Plaintiff 1.
3. Defendant Seidberg Law Offices, P.C. is a professional corporation, and a resident of Phoenix, Arizona, and is a debt collector within the meaning of 15 U.S.C. § 1692a(6).
4. Defendant Lawyer 1 ("Lawyer 1") is an attorney licensed to practice law in the State of Arizona and is a debt collector within the meaning of 15 U.S.C. § 1692a(6).
5. Defendant Lawyer 2 ("Lawyer 2") is an attorney licensed to practice law in the State of Arizona and is a debt collector within the meaning of 15 U.S.C. § 1692a(6).
6. Lawyer 1 and Lawyer 2 are sometimes referred to herein jointly as the "Defendants."
7. Citibank (North Dakota) N.A., ("Citibank") is a North Dakota corporation.
8. Does 1 – 10 are additional persons responsible in some way for the harms suffered by Plaintiff 1 and Plaintiff 2 as alleged herein, and will be named by their true names upon discovery thereof.

SUBJECT MATTER JURISDICTION

9. This is an action under 15 U.S.C. § 1692k(d), the private right of action statute of the Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. §§ 1692-1692p; wherefore, this Court has jurisdiction under 28 U.S.C. § 1331.

VENUE

10. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) and (2).

FACTS RELEVANT TO ALL CLAIMS FOR RELIEF

11. Plaintiff 1 and Plaintiff 2 restate and reallege each and every allegation made herein as if set forth in full hereat.

12. Plaintiff 1 had a credit card account with Citibank that she used to make purchases for personal, household and family purposes.

13. By letter Lawyer 1, acting on his own behalf, and as the employee of Lawyer 2 and Seidberg Law Offices P.C., sent an initial communication to Plaintiff 1 by U.S. Mail in the form of a demand for payment unsupported by any documentation. .

14. Plaintiff 1 responded by letter addressed to Lawyer 1 at his office at Phoenix AZ, and demanded validation of the debt pursuant to 15 U.S.C. § 1692g.

15. Defendants did not validate the debt.

16. Citibank has argued successfully that the rights of its cardholders and their co-obligors and family relations are limited to those of the express cardholder contract, which inter alia, provided for private arbitration through the National Arbitration Forum ("NAF"), American Arbitration Association ("AAA"), or Judicial Arbitration and Mediation Service ("JAMS"). Eg., Hilburn v. Encore Receivable Mgmt., Inc., 2007 WL 1200949 at *4 (D.Or. 2007)(wrongful death claim caused by collection efforts subject to arbitration). Citibank, and Defendants who are acting as its agents, assignees, or otherwise standing in its shoes, are therefore judicially estopped from initiating proceedings under any legal theory that would abrogate Citibank's duties under the express contract, or secure for it rights not available under the express contract.

17. On July 14, 2009, the Minnesota Attorney General filed State of Minnesota v. National Arbitration Forum, Inc., a consumer protection suit against NAF alleging that in direct contradiction of the statements of NAF and creditors like Citibank, who required debtors to use its services, it is actually owned by Accretive, LLC, a family of New York hedge funds that first acquired a controlling interest in NAF for $42 Million, and then acquired Mann Bracken, LLP, a New York debt collection lawfirm that had been created by merging three of the nation's largest debt collection lawfirms; then began using Mann Bracken, LLP to initiate 60% of the debtor-creditor arbitrations performed by NAF. Under this tainted aegis, while concealing "its affiliations with the collections industry through extensive affirmative representations, material omissions, and layers of complex and opaque corporate structuring," NAF had virtually guaranteed that creditors would always or nearly always prevail in consumer debt arbitrations commenced by Citibank and other creditors. NAF creditor awards were cranked out in boilerplate fashion, without ever conducting any actual consideration of facts or evidence, and were fraudulently inflated with exorbitant legal fees and costs charged by Mann Bracken, LLP. On July 24, 2009, a class action RICO lawsuit was filed in the U.S. District Court for the District of Minnesota, Sydnes v. National Arbitration Forum, Case 09-cv-01939-PAM-FLN, in which Citigroup, the parent of Citibank, was sued as a co-defendant. In August 2009, the City Attorney for the City of San Francisco filed suit against NAF in State of California v. NAF, San Francisco Superior Court Case No. 08-476569, alleging that NAF achieved a near 100% record of ruling for creditors and against debtors by incentivizing arbitrators to favor debt collectors, disregarding evidence favorable to consumers, violating NAF's own code of procedure, and failing to arbitrate honestly and fairly as promised. In September 2009, NAF was sued in a class action suit in the United States District Court for the Central District of California, Magnone et al. v. Accretive LLC, et al., CV 09-6375-GAF-CWx. Thus exposed, NAF withdrew from performing consumer debt arbitrations for

Citibank, and with that, Citibank lost all interest in enforcing, or being subject to, its arbitration clause. Although Citibank could have selected JAMS or AAA to perform arbitrations, it did not want to utilize their services, because those services would be far more costly, and would not produce the rigged results that NAF had been providing. Mann Bracken LLP colluded with Citibank during its use of NAF, purchased debt from Citibank for collections, and has devised numerous unlawful schemes for Citibank's utilization, among them, the scheme pursuant to which this lawsuit was filed. Mann Bracken LLP had its Maryland debt collection license revoked, and ceased operations on January 1, 2010.

18. Nevertheless, on information and belief Plaintiff 1 and Plaintiff 2 allege that, pursuant to a plan evolved by Mann Bracken LLP, and that Citibank has pursued nationally, Defendants have filed lawsuits in the State of Arizona, with such frequency as to make it an established unlawful collections practice that has affected large numbers of Citibank cardholders.

19. Pursuant to the above-alleged plan, Defendants initiated a lawsuit against Plaintiff 1 and Plaintiff 2 in the Superior Court of the State of Arizona in and for the County of Pima, to wit, Citibank (South Dakota), N.A. vs. Carole Martinez and John Doe, Spouse, Cause No. C20104439 (the "Superior Court action"). Plaintiff 2 was named as "John Doe, Spouse," and as to Plaintiff 2, Defendants alleged "the debt to be both community and separate in nature, the non-debtor spouse being joined as a necessary party in accordance with Arizona law...."

20. Pursuant to the above-alleged plan, Defendants applied for a default judgment against Plaintiff 1 in the Superior Court action pursuant to an affidavit executed on August 10, 2010 by Lawyer 1, in which Lawyer 1 falsely averred that "Since the service of a copy of the Complaint and Summons seeking affirmative relief herein upon these parties, the statutory time, exclusive of the day of service, within which these parties may plead or otherwise defend has passed." In truth and in fact, Plaintiff 1 was never served with the Complaint and Summons, and the time to plead or otherwise defend had never begun to run. It was the intent of the Defendants to enforce any judgment against Plaintiff 1 equally against the property of Plaintiff 2.

21. By so doing Defendants enabled Citibank to breach the express contract pursuant to which the relationship between Plaintiff 1 and Plaintiff 2 and Citibank arose, circumventing the procedure for private arbitration, and instead alleging a single cause of action for an Account Stated in the Superior Court action. Defendants certified that the Superior Court action, "including punitive damages," was subject to compulsory arbitration under the Uniform Rules of Procedure for arbitration, which was untrue, because the express contract provided that both parties would be subject to the private arbitration proceeding, and thus precluded the filing of a civil court case under Arizona law by either party. The certification was further misleading, because the least sophisticated consumer would naturally assume that the reference to punitive damages meant that Defendants could obtain an award of punitive damages in the Superior Court action; when in fact, however, they could not. The complaint initiating the Superior Court action prayed for an award of attorneys fees based on the express contract; however, the action is not upon the express contract, but rather on an Account Stated, for which attorneys fees would not in fact be recoverable. On information and belief, Plaintiff 1 and Plaintiff 2 allege that the Citibank express contracts also caps attorneys fees. The complaint and certification initiating the Superior Court action were deceptive in that they "cherry picked" provisions from the

express contract that it wished to enforce against Plaintiff 1 and Plaintiff 2, and failed to disclose provisions that it did not wish to make enforceable against Citibank, concealing the true nature of the legal relationship between the parties from Plaintiff 1, Plaintiff 2, and the Superior Court.

22. Defendants violated their duty to validate the debt, and improperly plead a common count instead of the express terms of the contract in order to avail Citibank of an unlawful avenue to avoid its contractual obligations and to deprive Plaintiff 1 and Plaintiff 2 of legitimate, cognizable defenses assertable under the contract, including: the defense that Plaintiff 1 was never given a copy of the contract and could not have manifested assent to its terms; the defense of unconscionability; the defense of adhesion; the defense that its assertion of unilateral authority to alter the terms of the agreement vitiated the contract and rendered it illusory; the defense that the interest rates and penalties imposed were not authorized under the cardholder agreement; the defense that Citibank's credit card practices were unfair and deceptive and violated its bank charter and the terms of its own borrowing agreements with the Federal Reserve Bank; the defense that Citibank engineered defaults in payment by sending out bills with unreasonably short time periods for payment in order to impose late payment penalties and raise interest rates; the defense that Citibank had sold Plaintiff 1's alleged debt and no longer had standing to assert the claim; the defense that Citibank had in fact already resold the Plainitff's account in an Asset-Backed Securities bundle and lacked standing to bring any claim; the defense that Citibank had already recouped its losses from the Term Asset-Backed Securities Loan Facility and was not entitled to a double recovery; and other defenses not yet fully known but that may be alleged upon discovery thereof.

FIRST CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
FOR VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT

23. Plaintiff 1 and Plaintiff 2 restate and reallege each and every allegation made herein as if set forth in full hereat.                    24. Lawyer 1, Lawyer 2, LO (law office) and Citibank (jointly "the Defendants") were legally required to cease all communications with Plaintiff 1 and Plaintiff 2 until they had validated the debt.

25. The Defendants instead sought to obtain an unlawful default judgment for the alleged debt.

26. The Defendants' mailing of the application for default to Plaintiff 1 was a communication that violated the proscription of 15 U.S.C. § 1692g(b) and § 1692c(c) against sending communications without prior validation and after notification of the request for validation.

27. The Defendants' mailing of the application for default to Plaintiff 1 was a communication that overshadowed and was inconsistent with the disclosure of Plaintiff 1's right to dispute the debt.

28. The Defendants' mailing of the application for default was a false and misleading representation in violation of 15 U.S.C. § 1692e(5) to take an action, to wit, a default judgment without prior service of the summons and complaint, that cannot legally be taken.

29. The Defendants' mailing of the application for default was a false and misleading representation in violation of 15 U.S.C. § 1692e(9) in that it simulated lawful process of a court of the State of Arizona, creating a false impression as to its authorization.

30. The Defendants' filing of the Certificate of Compulsory Arbitration was a false and misleading representation in violation of 15 U.S.C. § 1692e(5) to take actions that could

not legally be taken, to wit, obtaining punitive damages under a common count for Account Stated, obtaining attorneys fees under an Account Stated, and securing compulsory judicial arbitration not authorized under the operative express contract.

31. The Defendants' filing of the Certificate of Compulsory Arbitration was a false and misleading representation in violation of 15 U.S.C. § 1692e(5) to take actions that could not legally be taken, to wit, suing on behalf of Citibank when Citibank had no standing, having sold the debt already to a third party.

32. The Defendants' filing of the Certification of Compulsory Arbitration that Citibank was entitled to compulsory arbitration against Plaintiff 1 was a false and misleading representation in violation of 15 U.S.C. § 1692e(9), because it simulated lawful process of a court of the State of Arizona, creating a false impression as to its authorization.

33. Defendants and Citibank intended to enforce any judgment against Plaintiff 1 against Plaintiff 2 as well.

34. Wherefore Plaintiff 1 and Plaintiff 2 have has been damaged in the amount of the judgment that the Defendants sought to obtain against Plaintiff 1.

## SECOND CLAIM FOR RELIEF AGAINST ALL DEFENDANTS FOR DECLARATORY RELIEF

35. Plaintiff 1 and Plaintiff 2 restate and reallege each and every allegation made herein as if set forth in full hereat.

36. An actual dispute has arisen between the Plaintiff 1 and Plaintiff 2 on the one hand, and Defendants on the other hand, in that Plaintiff 1 and Plaintiff 2 contend that the Defendants, acting on behalf of Citibank, have attempted to procure against a default judgment to enforce against both Plaintiffs that was in legal fact void because procured by intrinsic fraud and in violation of the Fourteenth Amendment right to due process in the form of notice and an opportunity to be heard before being deprived of property; whereas, the Defendants contend that the Superior Court action was lawful and may be the basis for an enforceable judgment.

37. Wherefore, Plaintiff 1 and Plaintiff 2 seek an order barring further prosecution of the Superior Court action, and a declaration that any judgment against Plaintiff 1 is void and unenforceable, and may not be made the basis of any lien on real or personal property, or in any other fashion provide the basis of any legal obligation enforceable against Plaintiff 1 or Plaintiff 2.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff 1 and Plaintiff 2 pray for judgment against defendants as follows:

ON THE FIRST CLAIM FOR RELIEF:
1. For economic damages according to proof;
2. For statutory damages of $1,000;
3. For non-economic damages according to proof;
4. For attorneys fees;
5. For punitive damages;

ON THE SECOND CLAIM FOR RELIEF:
6. For an injunction barring further prosecution of the Superior Court action or the issuance of any postjudgment enforcement orders based thereon;
7. For a declaration declaring void any judgment that the Defendants have obtained against Plaintiff 1;

ON ALL CLAIMS FOR RELIEF, for judgment and such other and further relief as the Court deems just.

PLAINTIFF SIGNATURES ****************************

JURY DEMAND

Pursuant to F.R.Civ.P. 38(b), Plaintiffs demand a jury trial.

SIGNATURES